IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

IN RE EASTON W.[1]

**Appeal from the Juvenile Court for Hamilton County**
**No. 278707   Robert D. Philyaw, Judge**

---

**No. E2018-01883-COA-R3-JV[2]**

---

This consolidated appeal concerns a father's action, filed pro se, to be granted custody of his child, or, in the alternative, reasonable visitation without the requirement of paying child support. Following a series of hearings in juvenile court, the father was named the primary residential parent, a permanent parenting plan was adopted, and the child support proceedings were assigned a separate docket number to be handled by Maximus/Child Support Services.  Because the action was originally yet mistakenly filed as a dependency and neglect action by the father, the mother appealed the juvenile court's decision to circuit court.  On the father's motion to alter or amend, the juvenile court struck the dependency and neglect language from its order, and the circuit court then dismissed the action for lack of subject matter jurisdiction.  We affirm the juvenile court's decision in decreeing this matter a paternity and visitation action, and we find that the circuit court correctly held that it lacked subject matter jurisdiction over the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and W. NEAL MCBRAYER, J., joined.

Robert N. Meeks, Chattanooga, Tennessee, for the appellant, Brittany Nicole W.

Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Joshua Nathan M.

---

[1]This court has a policy of protecting the identity of children in child custody cases by initializing the last name of the child.

[2]On June 25, 2019, the appellate court clerk consolidated the appeal of the circuit court case (E2018-02302-COA-R3-CV/No. 18D1263) into the appeal of the juvenile case.

# OPINION

## I.     BACKGROUND

Easton W. ("the Child") was born to Brittany Nicole W. ("Mother") in April 2015 while she was married to Christopher W.  In the divorce proceedings associated with the marriage, it was determined that the Child's biological father was not Christopher W.  Joshua Nathan M. ("Father") eventually learned that he was the biological father of the Child.  He immediately moved from his home in Arkansas and took the closest job he could find with the postal service to be near the Child.  Father first moved in with Mother for six months to parent the Child alongside her.  Following the disintegration of the parties' relationship, Father moved to Scottsboro, Alabama, to live with his mother and continued to visit the Child as he was able.

After Mother and Father separated, Mother did not want Father to have continued contact with the Child.  Father responded by filing a pro se petition in juvenile court on August 9, 2017, seeking to be granted custody or, in the alternative, reasonable visitation without the requirement to pay child support.  However, the form used to file this pro se action presented the action as one of dependency and neglect of a child.  In her pro se answer to the petition for custody, Mother asserted that there was no reason to change custody of the Child.

Following a hearing before a magistrate on October 17, 2017, the parties were ordered to enter mediation and encouraged to agree upon a parenting schedule.  After the parties' attempts at mediation were unsuccessful, the magistrate sustained Father's petition for visitation rights in a hearing on December 21, 2017, and ordered a parenting schedule granting Father parenting time in periods of days that were to be agreed upon by the parties.

On January 12, 2018, Father requested a de novo review of all issues heard on December 21, 2017, or, in the alternative, an appeal of the juvenile court's decision.  On February 21, 2018, a de novo hearing was held before the presiding judge of the juvenile court.  The record on appeal contains an order that provides as follows:

> Date: February 21, 2018
> Judge: Robert D. Philyaw
> Petition #278,707
>
> **ORDER**
>
> This matter came before the Court upon Request for Rehearing filed by Attorney Phil Jacobs, representing Joshua M[.], Father, from the Findings and Recommendations of the Magistrate on December 21, 2017 at which time parenting time

was set out for Mr. M[.].

The Court heard from Mr. M[.] and the mother, Brittany W[.].

The Court was of the opinion both parents could have made better decisions in certain situations but it was evident both parents do love their child. The Court was concerned with the mother's demeanor in the Courtroom but gave her the benefit of the doubt since she received little sleep last night in an effort to complete school work (for class at Chattanooga State). The Court was given no explanation for the way she acted, described by the father and for the most part undisputed, in the preceding few months.

Father plans to obtain employment and move to Chattanooga to be closer to his son. The only concern voiced about Mr. M[.] was allowing the child to ride a battery-operated four wheeler; there was some speculation the paternal grandmother's medication may be within the child's reach.

Mother, however, felt like she should be the only one in charge and wanted her (now ex-) husband, Mr. W[.], to be the father, to the detriment of the child. Father missed a year to a year and a half of the child's family but as soon as he found out he was the father of the child he tried to move closer and become a part of the child's life.

There was no evidence this was a typical domestic abuse situation in that Mother did not call law enforcement, seek medical attention, or take pictures of any injuries. Mother acknowledged she had a difficult childhood and she has sought help from a psychiatrist. Mother stated after the first session, in which she admitted, to the Court and to the father, to not being truthful, she fully disclosed her issues.

The Court was concerned about Mother's statements about possibly committing suicide, saying she wanted to kill the father and taking a picture holding a gun to her head.

The Court heard no testimony of problems with exchanges except from Mother which unfortunately goes to Mother's feeling she can make unilateral decisions, to the detriment of the relationship between the father and the child.

Mother leaves the child with the grandparents even though the father wants to spend time parenting the child. Mother excluded father many times to the point she felt her ex-husband, Mr. W[.], would be the better father.

The Court relied on the Child Custody Statute (2014 revision) Tennessee Code Annotated §36-6-106 (a through e) to make the custody determination.

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

The father was not given the opportunity in the child's early months to have a relationship with the child. There was undisputed testimony Father took on the majority of the parenting duties and day to day care for the child. There was no indication the child was not well taken care of. This factor weighed in favor of Father.

(2) Each parent's ability to facilitate and encourage a close and continuing parent-child relationship between the child and the other parents...;

The Court heard nothing about the mother nurturing a relationship between the child and the father but testimony showed she went as far as to exclude the father from the child's early months. Father did nurture the relationship between the child and Mother, consoling the child when it was time to return to Mother's care. This factor weighed in favor of the father.

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

The parents were not previously ordered to attend a parenting seminar but the Court encouraged Mother and Father to attend the seminar together if possible.

(4) The disposition of each parent to provide the child with

food, clothing, medical care, education and other necessary care;

There was no indication the child did not have his basic needs met by both parents.

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

This factor was previously addressed in number one.

(6) The love, affection, and emotional ties existing between each parent and the child;

Testimony showed both parents love the child and have a strong bond with him.

(7) The emotional needs and developmental level of the child;

No proof was given showing this factor was pertinent.

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

The Court heard unflattering testimony about both parents. There were some especially concerning issues for which the Court has been told Mother sought professional therapeutic help. The Court encouraged Mother to continue that therapeutic relationship if she feels the need to do so.

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the

child's involvement with the child's physical surroundings, school, or other significant activities;

The proof showed Mother met a man online and six (6) weeks later she and her children were living with the man and his three (3) children. This raised concerns for the Court about Mother's judgement.

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

Factors ten and eleven were not addressed.

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

The Court did not hear much about anyone living with the mother but, again, the Court found it a drastic move to bring her children into another home after having only known the man for such a short period of time.

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

Not addressed due to the child's young age.

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules;

Both parents work, sometimes more than one job, and Mother attends school. At this time Father's schedule is the more flexible.

Since this was before the Court in the posture of a Rehearing, the Court deemed it as a first custody order in the case rather than a change in custody. When determining which parent would be the primary residential parent, from all the proof and testimony presented, the Court found the father was in the best position to assume the role of primary residential parent; the Court intends for both parents to spend as much time as possible with the child.

Unless or until the parents and their attorneys submit a permanent parenting plan the Court will issue an interim plan.

The Court directed Mr. Jacobs to draft the order to include an agreed upon permanent parenting plan or submit the order as proposed. If Mr. Meeks objects to the order he will have ten (10) days to submit his proposed order and the Court will make a determination at that time.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:**

1. Petition 278,707 is sustained as to shared parenting.

2. Brittany W[.] and Joshua M[.] will have joint care, custody and control of Easton W[.] with both given the authority to consent to any educational, medical, surgical, or hospital procedures necessary in the best interest of said child. Father will be the primary residential parent.

3. Pending submission of a parenting plan parents will exercise a week on, week off schedule. Father's week will begin Friday, March 2, 2018 at 6:00 p.m. The parent receiving the child for the coming week will pick the child up at the home of the other parent.

4. ATTORNEY PHIL JACOBS WILL DRAW, CIRCULATE, AND SUBMIT THE ORDER FOR APPROVAL AND ENTRY WITHIN TEN (10) DAYS.[3]

---

[3]At the conclusion of the hearing, the court stated: "Mr. Jacobs, I'm going to ask you to actually draft what is hopefully an agreed order, circulate it and then if the agreements – if there'[re] things that can't be agreed to, but that either of you want changed from today's order regarding parenting time, you know, the 50/50, I made that decision even though reluctantly because I know with school-age children that's very hard. But if you have to, file it as proposed and then you file your objections to it and I'll make the decision."

> 5. **The parties are advised that they have thirty (30) days from the entry of this Order to request an appeal to the Court of Appeals in Knoxville, Tennessee.**

(Emphasis added.). This order was signed by the juvenile court judge on March 10, 2018, and stamped entered on March 12, 2018. Notably, the order made no mention of dependency and neglect.

On March 16, 2018, Mother filed a proposed order with the juvenile court to memorialize the court's findings from the February 21, 2018, hearing. It provided as follows:

> This matter came to be heard on the 21st day of February, 2018, before the Honorable Robert Philyaw, presiding over the Juvenile Court of Hamilton County, Tennessee, ***upon a dependency and neglect Petition filed by the Father***. Wherein, Father asked to be granted "custody, or in the alternative, reasonable visitation and not having to pay child support". Based upon the testimony of the parties and the record as a whole, this Court makes the following Findings of Facts and Conclusions of Law:
>
> 1. Both of the parents are young.
>
> 2. Neither parent is perfect, and each could have made better decisions at different times during their lives.
>
> 3. Both parents love the child.
>
> 4. The child is doing well and turns 3 on April 30, 2018.
>
> 5. The Court is concerned about the Mother, specifically, with regard to the way she appeared in Court; the Court has given the Mother the benefit of the doubt with reference to how she and her counsel explained her demeanor in measuring her testimony.
>
> 6. The explanations given by the Mother of stress and lack of sleep does not excuse her behavior in the months preceding the trial.
>
> 7. The Father lives in Scottsboro with the Paternal

Grandmother and is trying to move closer to the Mother.

8. The Father moved from Arkansas and took the closest job he could find with the postal service, a[s] soon as he found out that he was the Father of the child.

9. The Father resides with his Mother in Scottsboro and the Mother provided no proof of any issues with the Paternal Grandmother's significant other or half-brother, both of which reside in the residence.

10. The Mother also presented no real issues with the Paternal Grandmother, except some speculation about the child's access to medication.

11. The Mother's testimony confirmed that since conception, she has believed and acted like she should be the parent in charge of everything.

12. The Mother wanted Mr. W[.] to be the Father; she made that unilateral decision to the detriment of the Father and the child.

13. It is tragic that the Father missed the first year and a half of a relationship.

14. As soon as Father found out he was the biological Father, he responded appropriately.

15. There has been some evidence of abuse back and forth between the parties, but no real sign of domestic abuse.

16. The behavior between the parties is not acceptable nor condoned by the Court; however, the Mother did not produce any pictures of physical abuse or proof that she contacted the police. The Court certainly believes that if the issues had arisen to the level of domestic violence, that the Mother would have taken those steps.

17. The Mother has had a very difficult childhood, which she did not initially disclose to her psychiatrist, but she testified that she rectified that in the following four (4) sessions.

18. The Mother is not currently seeking treatment, but the Mother should seek treatment, if she needs the same.

19. The Court is concerned about the Mother's suicidal threats and the Mother's threats to harm Mr. W[.].

20. Allegations of taking pictures of a gun pointed at your head and the Mother's behavior displayed on the recording, give the Court great concern.

21. It is unfortunate that the Mother displays that she believes she should be making unilateral decisions on behalf of the child, and the Father has to deal with it, even to the detriment of the child.

22. The fact that the Mother leaves the child with family members in and of itself is a common decision; however, the Father is trying to visit, and it appears to the Court that the Mother made the decision to exclude the Father, and this combined with the fact that the Father was excluded for the first 18 months of the child's life so that she could be with Mr. W[.], leaves the Court to determine that she is trying to alienate the Father.

23. This is an initial custody termination and the Court is required to measure the best interest of the minor child, pursuant to T.C.A. §36-6-106.

24. The Father did not have an opportunity to parent during the first eighteen (18) months, but the undisputed testimony is that the Father performed the majority of parenting for Easton and Mother's other child for the six months the parties resided together, prior to the filing of this action.

25. If the Court had to weigh the factor of the parent who acted as primary caregiver in favor of one of the parents, the Court would find that the Father provided more of the care during the child's life, when he was aware that he was the Father.

26. How the parents encourage a relationship between one another is the most important factor, and the Court has already found that the Mother has failed to encourage a relationship between the Father and the minor child.

27. The Father has attempted to encourage a relationship between the Mother and the minor child, as is evidenced by the most recent events when he encouraged the child to go with the Mother.

28. There is no requirement for either parent to attend the parenting class, but the parties are encouraged to attend the class and attend the class together.

29. The parties' ability to provide for the needs of the child is equal.

30. The parties' love and affection for the minor child is equal.

31. The child has no special needs.

32. The Court is concerned with the other people in the Mother's home.

33. The Mother's testimony is that six weeks after breaking up with the Father, she moved a man that she met online into her residence, and his three young sons visit in the home on a regular basis.

34. The Mother's decision to move a gentleman into her home so quickly after breaking up with the Father, is a drastic decision by the Mother.

35. The Mother's decision to move this gentleman into her home so rapidly is not reasonable and reflects upon her poor judgment.

36. Both parents work and the Mother goes to school, and at times the parties have worked two (2) jobs. The Court must consider the parents' work schedules, but for now the Court will adopt a week on/week off schedule unless the parties can agree to a different schedule.

37. The Father is in the best position to provide for the best interest of the child and he will be named the Primary Residential Parent. If the parties cannot agree upon a Parenting Plan, then the Father shall submit a Parenting Plan, and the

Mother will be given an opportunity to object to the plan by filing her own proposed plan.

38. The parties shall rotate week on/week off co-parenting with the receiving party providing the transportation. Not going to the home of the other parent to pick up the child signals that there is a problem with the other party's home.

39. The parties need to talk and begin to open up the lines of communication.

40. The Court sees no reason that the surname of the child should not be changed, the child should not be named after the Mother's ex-husband; however, this decision will be left to the discretion of the Child Support Magistrate for the time being.

It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Father is named the Primary Residential Parent.

2. The enclosed Permanent Parenting Plan is incorporated herein without restating the same verbatim.

3. All matters with reference to child support and the child's surname shall be handled by Maximus/Child Support Services under docket number 54548.

4. Each party will pay their own attorney fees.

5. Any remaining court costs shall be divided equally between the parties.

(Emphasis added.). In contrast to the juvenile court's earlier order, the preamble of this proposed order stated that it arose upon a dependency and neglect petition filed by Father. Further, the proposed order did not include the instructions to direct an appeal to this court. The proposed order was signed and entered by the juvenile court along with the proposed parenting plan on March 29, 2018.

At the same time, Mother also moved for reconsideration of the juvenile court's February 21, 2018 ruling. In her motion, Mother expressed concern with some of the testimony that was allowed during the hearing and related alleged verbal and physical assault by Father that had occurred since the hearing. Mother also complained about the

Child's behavioral and emotional difficulties that had arisen as a result of the weekly parenting exchanges. Upon a hearing on May 30, 2018, the juvenile court encouraged the parties to work together to alleviate the Child's anxiety at exchange time but denied Mother's motion to reconsider. The order was signed and entered on June 8, 2018.

On June 6, 2018, two days before the juvenile court entered its order on the motion to reconsider, Mother filed a notice with the juvenile court of her intention to appeal to the circuit court. On June 18, 2018, the circuit court set the case for hearing. Father responded with a motion to dismiss on the grounds that the appeal should have been filed to this court, as the action in the juvenile court was one of establishing paternity and visitation, not of dependency and neglect. However, after a hearing on July 16, 2018, the circuit court denied Father's motion to dismiss without prejudice on August 23, 2018. Additionally, the circuit court granted Mother's motion to join the child support matter pending in juvenile court to the action to be heard by the circuit court in the interest of judicial economy.

On August 31, 2018, Father moved to alter or amend the juvenile court's judgment pursuant to Rule 59 of the Tennessee Rules of Civil Procedure, or, in the alternative, to set aside the judgment pursuant to Rule 60. Father requested that the juvenile court enter a new judgment removing the dependency and neglect language from the order entered on March 29, 2018, given that the action was a paternity and visitation action. In Mother's view, the juvenile court's order removing the dependency and neglect language from the earlier order was improper because the appeal had already been perfected to the circuit court.[4] She posited that because the circuit court had already docketed her appeal, the juvenile court was without jurisdiction to amend its order. She asserted that Father had waived the issue by not raising it at trial and by failing to amend his pleadings to remove the dependency and neglect language to conform to the proof presented at trial.

On September 12, 2018, the juvenile court heard Father's motion and struck the language "upon dependency and neglect" from the order, pursuant to Rule 60. The judgment entered September 14, 2018 provided as follows:

> This matter came to be heard on the 12th day of September, 2018 before the Honorable Robert Philyaw on the Motion to Alter or Amend Judgment pursuant to Tennessee Rule of Civil Procedure 59, or in the alternative pursuant to Tennessee Rule of Civil Procedure 60 to set aside the previous Judgment and enter a new Judgment. Based on the argument of counsel and the record as a whole, ***this Court finds that it was a mistake for the Court to approve language in an Order prepared by Counsel for the Mother that said this matter came to be heard on a dependency and neglect Petition. Pursuant to T.R.C.P.***

---

[4]Mother desired "a de novo trial" with the circuit court in contrast to the review available before this court.

- 13 -

*§ 60.02 the Court corrects that Order and strikes "upon a dependency and neglect." There is no reference to any dependency and neglect proceeding in the Court's opinion from the same hearing and neither party alleged any dependency and neglect, [in] any pleading, or argument, or allegation throughout the trial. This was custody proceeding and because the Circuit Court never had jurisdiction, this Court retains jurisdiction, especially with Orders that this Court approved.* There are forms that have been used by this Court that existed prior to this Court being elected and steps are being taken to remedy issues created by those forms. The Court's Order from the Court's opinion, not the Order prepared by Counsel for the Mother, directly ordered, "the parties advised that they have thirty (30) days from entry of this Order to request an Appeal to the Court of Appeals in Knoxville, Tennessee." It is therefore **ORDERED, ADJUDGED and DECREED:**

1. That pursuant to Tennessee Rule of Civil Procedure 60, the previous Judgment is set aside and re-entered with the verbiage of dependency and neglect being stricken and the record reflecting that this matter is not a dependency and neglect matter.

2. *The Judgment should reflect that this matter came to be heard on a Petition to Establish Paternity and Custody, and for the Court to adopt a Parenting Plan*.

3. *The appeal from the Court's Final Judgment remains to the Court of Appeals and not the Circuit court*.

4. Time for filing an appeal to Eastern Division of the Court of Appeals is pursuant to Tennessee Rules of Appellant Procedure.

(Emphasis added.).

A hearing was held in the circuit court on September 24, 2018, to consider Father's renewed motion to dismiss. The circuit court observed: "[M]y feeling is that, Judge Philyaw can take care of Judge Philyaw's orders and he ought to be able to amend that order . . . [u]nless, of course, there's case law that says it's divested and he can't do it period. That's what I'm interested to know because if there's nothing clear, I'm sending it back to them." Subsequently, on November 6, 2018, the circuit court ruled as follows:

- 14 -

**THIS MATTER** was before the Court on Petitioner Joshua Nathan M[.]'s renewed Motion to Dismiss. The Court having reviewed the file proceeded to make inquiry of counsel for the respective parties. Thereupon, the Court heard the argument of counsel for the respective parties, gave due consideration to the Record, and the position of the respective parties and announced its opinion. The Record reflects that Joshua Nathan M[.] filed a pro se Petition on August 9, 2017 asserting that he was the putative father of the minor child Easton [] W[.]. He asserted that he would like to be granted custody of his child or, in the alternative, reasonable visitation with what had been determined to be his minor child. The Mother was married while she was pregnant with the child who is the subject of the underlying action. She and her husband were then divorced and the husband was excluded as the father. The Mother filed a pro se Answer to the Father's Petition on September 7, 2017 asserting that she was answering the Petition for custody. The Mother asserted that there was no reason to change the custody.

Thereafter, there was a Petition to Establish Paternity filed in the Juvenile Court . . . . After the parties retained counsel, there was an unsuccessful mediation and a trial on the merits before Judge Robert D. Philyaw, Judge of the Juvenile Court of Hamilton County. After the Final Order of Judge Philyaw, Respondent Britney Nicole W.] filed a notice of appeal to this Court. The Father filed a Motion to Dismiss the appeal as an appeal from the Judgment of the Juvenile Court in the paternity action should be filed in the Court of Appeals in Knoxville, Tennessee. The Court denied the Motion to Dismiss without prejudice. The Father then filed a Motion Seeking Relief in the Juvenile Court from that portion of the Order which indicated without a basis in fact or law the existence of a dependency and neglect proceeding or issue. Judge Philyaw heard the Motion for relief and to correct the judgment which had been entered in Juvenile Court. Judge Philyaw granted Father's Motion and corrected the Order. The entry of the Judgment referring to dependency and neglect was merely a mistake and has been corrected by the Judge who tried the case only on the issues of paternity and custody. The corrected Order strikes from the previous Order the language asserting that the matter was tried as a dependency and neglect matter. This Court believes that the Juvenile Court has properly determined that the action

which was tried before the Juvenile Court of Hamilton County was, in fact, a paternity action. Such is supported by the pleadings in the Juvenile Court, the Final Order and the corrected Final Order. The issue which is sought to be appealed to this Court is factually and legally a decision of a court with competent jurisdiction as to the issues which were tried and had original and co-equal jurisdiction with this Court to hear the issues of paternity. Thus, an appeal, if any, should be made to the Court of Appeals for the Eastern District of Tennessee in Knoxville. Judge Philyaw's Order properly asserts that the Mother's right of appeal is still available to the Mother and she can present any issues contesting the decision of the Juvenile Court to the Court of Appeals. Her rights to appeal as governed by the Rules of Appellate Procedure are still available to her.

**IT IS ACCORDINGLY ORDERED** that the renewed Motion to Dismiss is sustained. The appeal herein is dismissed without prejudice to the rights of Britney Nicole W[.] to seek an appeal to the Court of Appeals in Knoxville.

Appeals of the final orders from the circuit court as well as the juvenile court followed. The appellate court clerk consolidated the cases into the matter before us on June 25, 2019.

## II. ISSUES

We consolidate and restate the issues on appeal as follows:

A. Whether this action maintained its dependency and neglect classification considering the evidence presented at trial and the juvenile court's decision.

B. Whether the circuit court erred in finding a lack of subject matter jurisdiction over Mother's de novo appeal.

C. Whether the juvenile court erred in amending its final order after Mother appealed to the circuit court.

D. Whether the circuit court has proper subject matter jurisdiction over the pending child support proceedings.

E. Whether the circuit court erred in dismissing Mother's de novo appeal.

- 16 -

## III.    STANDARD OF REVIEW

On appeal, factual findings of the trial court are extended a presumption of correctness and will not be set aside unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Legal conclusions of the trial court, which include determinations made concerning subject matter jurisdiction, are reviewed de novo with no presumption of correctness. *See Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *see also Vaccarella v. Vaccarella*, 49 S.W.3d 307, 311 (Tenn. Ct. App. 2001) (holding that "if outcome-affecting errors are found, we are required to grant appropriate relief to the aggrieved party"). Mixed questions of law and fact also are not accompanied by a presumption of correctness and are reviewed de novo, yet appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *see also Murdock Acceptance Corp. v. Jones*, 362 S.W.2d 266, 268 (Tenn. Ct. App. 1961).

## IV.    DISCUSSION

### A. & B.

There are important procedural differences between filing a dependency and neglect action and filing an action to establish paternity and visitation. First, juvenile courts have exclusive original jurisdiction over dependency and neglect actions, but juvenile courts share concurrent jurisdiction with chancery and circuit courts over matters involving paternity and visitation. Tenn. Code Ann. § 37-1-103(a)(1) (2019); *see P.E.K. v. J.M.*, 52 S.W.3d 653, 660 (Tenn. Ct. App. 2001). Second, an appeal from a dependency and neglect action heard exclusively in juvenile court "may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a) (2019); *see Green v. Green*, No. M2007-01263-COA-R3-CV, 2009 WL 348289, at *1, *8 (Tenn. Ct. App. Feb. 11, 2009). However, matters heard by a juvenile court exercising concurrent jurisdiction "are governed by the Tennessee Rules of Appellate Procedure, which provide that civil appeals are to be made to the Court of Appeals." *In re D.Y.H.*, 226 S.W.3d 327, 329 (Tenn. 2007); *see* Tenn. R. App. P. 3.

Given these differences governing appeals and proper subject matter jurisdiction, whether this action maintained its dependency and neglect characterization governs the outcome of several legal issues present here. This case was originally filed by Father, who was at the time pro se, using a form he received from the juvenile court. The first paragraph of this form asserts that Father is representing that the named child "is a dependent and neglected child within the meaning of the State of Tennessee." However, in the next

- 17 -

paragraph, where the petitioner is provided space to explain why the child is dependent and neglected within the meaning of the law, Father wrote: "I would like to be granted custody or, in the alternative, reasonable visitation and not having to pay child support."

When the juvenile court reviewed Father's motion to alter or amend its judgment on September 12, 2018, the court observed: "There is no reference to any dependency and neglect proceeding in the Court's opinion from the same hearing and neither party alleged dependency and neglect" in "any pleading, or argument, or allegation throughout the trial." The court suggested why the pro se petition form included dependency and neglect language in the first place: "There are forms that have been used by this Court that existed prior to this Court being elected and steps are being taken to remedy issues created by those forms." Therefore, not only did the proceeding fail to include any evidence or argument related to dependency or neglect, but the form that Father used to file his petition was an outdated, incorrect form that should not decide the nature of this case alone.

Previous cases from the Supreme Court as well as in this court have found that "[t]he nature and substance of a proceeding cannot be transformed simply by the filing of a petition with a different caption." *State Dept. of Children's Servs. v. Owens*, 129 S.W.3d 50, 54 (Tenn. 2004); *see Clark v. Cooper*, No. E2012-00684-COA-R3-CV, 2013 WL 1097773, at *1, *3 (Tenn. Ct. App. Mar. 18, 2013). Because "a judge's stated characterization of a matter may be mistaken," reviewing courts "must look to the nature of the action to determine its character." *Clark*, 2013 WL 1097773, at *3; *see also Holley v. Holley*, 420 S.W.3d 756, 760 (Tenn. Ct. App. 2013) ("We … must look to the substance of the Petition to see if what it alleges is tantamount to alleging dependency and neglect under the statute.").

The substance of this matter, as the juvenile court found, is a paternity and visitation action. Father was having difficulty continuing a relationship with the Child, so he turned to the court seeking custody, or at the very least, visitation rights without having to pay child support. Outside of the outdated, incorrect form, the only mention made to dependency and neglect in this case was within the proposed order prepared by Mother's counsel that was signed by the court on March 29, 2018. When the mistake was brought to the attention of the juvenile court by Father's motion to alter or amend the judgment, the court immediately corrected it by striking the dependency and neglect language. *See* Tenn. R. Juv. P. 105(b). We affirm the juvenile court's conclusion that the reference to neglect and dependency was a mistake, and we find that the action between these parties is properly characterized as an action to establish paternity and visitation.

Mother argues passionately in her brief that an action that begins as a dependency and neglect proceeding remains as such. She contends that "[a] petition alleging dependency and neglect, either expressly or in substance, implicates the original jurisdiction of the juvenile court." *Holley*, 420 S.W.3d at 760. While this is a true statement of the law, it is only part of the picture. Reviewing courts "ultimately must look

- 18 -

to the substance of what has been alleged," beyond the pleadings, to properly decide what characterization an action takes. *Id.*; *see also Clark*, 2013 WL 1097773, at *3. An action characterized as a dependency and neglect proceeding in name only, without further support in the record, pleadings, or decision, cannot be considered properly classified.

Mother relies on authorities instituted as dependency and neglect proceedings but connected to child custody disputes that cause the entire action to carry the dependency and neglect characterization. For example, in *In re D.Y.H.*, the proceeding began with the filing of a dependency and neglect petition. 226 S.W.3d at 331. After the juvenile court determined that the child was dependent and neglected, custody was awarded to the father. *Id.* Three years later, the mother filed a change in custody petition heard by the same juvenile court "pursuant to its continuing dependency and neglect jurisdiction." *Id.*; *see* Tenn. Code Ann. § 37-1-103(c). In its review of the case, the Supreme Court held:

> [W]ithout an interrupting event under section 37-1-103(c), a subsequent decision by the juvenile court on whether to modify an initial custody order will also arise from and be a part of the dependency and neglect proceeding. This is true even if a petition for a change in custody does not reference the dependency and neglect hearing and even if it is filed years after the final order is entered. Accordingly, any appeal from such a custody decision is to be made to circuit court.

*In re D.Y.H.*, 226 S.W.3d at 331. Similarly, in *State Dept. of Children's Servs. v. Owens*, the case began as a dependency and neglect proceeding against the adoptive parents of the child in question. 129 S.W.3d at 56. Shortly after the action was filed, the couple that had adopted the child's biological siblings filed a petition to intervene in the proceeding seeking custody of the child. *Id.* While both of these actions were pending, the Tennessee Department of Children's Services filed a petition to terminate the parental rights of the child's adoptive parents. *Id.* Because the juvenile court took up the termination of parental rights petition first, the petition to intervene was deemed moot, leaving the couple seeking to intervene without a remedy. *Id.* At the conclusion of the Supreme Court's opinion, the Court reversed the Court of Appeals and remanded the case to the circuit court to consider the custody case related to the dependency and neglect action. *Id.* at 57. The Court declared that the circuit court "shall regard the cause as involving dependency and neglect and shall concurrently consider and decide all petitions within that context." *Id.* Therefore, the dependency and neglect character of the case remained an essential part of its classification.

Mother argues that the case at bar should retain its original dependency and neglect character as well because it began as such an action. She argues that like the two cases above, although the appealed determination is mainly one of child custody, it cannot be separated from its dependency and neglect origination. This argument, however, is again

- 19 -

incomplete. In the two Supreme Court cases above, the dependency and neglect action played a central role in the pleadings, evidence presented, and decisions made by the Court. *See In re D.Y.H.*, 226 S.W.3d at 331 (where the dependency and neglect action was explicitly ruled on and found by the Court before the child custody action was added); *Owens*, 129 S.W.3d at 56-57 (where the evidence and the pleadings in the record properly demonstrated to the Court that the action's nucleus was in the dependency and neglect petition). In contrast, in this case, there is nothing established in the original pleadings, in the juvenile court's record, or in the juvenile court's decision, that gives any evidence or indication that this case is a dependency and neglect proceeding. Rather, the evidence, record, and decision of the juvenile court all reveal the opposite—this case is solely a child custody proceeding.

Because we find that this action is correctly characterized as a proceeding to establish paternity and visitation, and not one related to dependency or neglect, we also find that the circuit court did not err in finding a lack of subject matter jurisdiction in this case. Subject matter jurisdiction refers to "a court's power to adjudicate a particular type of controversy." *Staats v. McKinnon*, 206 S.W.3d 532, 541-542 (Tenn. Ct. App. 2006); *see Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003). Further, subject matter jurisdiction is determined by "the nature of the cause of action and the relief sought and is conferred by the sovereign authority which organizes the court." *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (citing *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d 296, 297 (Tenn. 1988)). As applied here, the jurisdiction over child custody actions is concurrent and co-equal between circuit, chancery, and juvenile courts. *See Gilland v. Gilland*, Nos. M2002-02276-COA-R3-CV, M2002-02770-COA-R3-JV, 2004 WL 2583885, at *1, *3 (Tenn. Ct. App. Nov. 9, 2004); *see also* Tenn. Code Ann. §§ 37-1-104 (2016) and 36-2-307 (1998). As such, appeals "are governed by the Tennessee Rules of Appellate Procedure, which provide that civil appeals are to be made to the Court of Appeals," not to the circuit court. *In re D.Y.H.*, 226 S.W.3d at 329; Tenn. R. App. P. 3. The appeal to the circuit court was improper. Tenn. R. App. P. 3; *see Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996).

C.

Unlike circuit or chancery courts, juvenile courts are courts of limited jurisdiction, and the specific scope of jurisdiction of these courts is outlined by statute. *Stambaugh v. Price*, 532 S.W.2d 929, 932 (Tenn. 1976); *see* Tenn. Code Ann. §§ 37-1-103 and 37-1-104. Statutes delineating the juvenile court's scope of jurisdiction provide areas of the law where juvenile courts hold exclusive jurisdiction and where they share concurrent jurisdiction with the circuit and chancery courts. Tenn. Code Ann. §§ 37-1-103 and 37-1-104. Paternity and visitation actions are areas of the law where juvenile, circuit, and chancery courts share concurrent, co-equal jurisdiction. *P.E.K.*, 52 S.W.3d at 660. Thus, an appeal of a custody action heard by the juvenile court is "governed by the Tennessee Rules of Appellate Procedure." Tenn. Code Ann. § 37-1-159(g); *see* Tenn. R. Juv. P.

118(a).

The juvenile court's final orders regarding the hearing of February 21, 2018, adjudicated issues related to establishing paternity and visitation. *See* Tenn. R. Juv. P. 118(e); *see also Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999) (citing *State ex. rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997). The juvenile court specifically "advised that [the parties had] thirty (30) days from the entry of this Order to request an appeal to the Court of Appeals in Knoxville, Tennessee." The appeal rested within the jurisdiction of this court. Tenn. R. App. P. 3(a), (e). In the case at bar, when Mother's counsel appealed the juvenile court's decision to the circuit court asserting that this action was a dependency and neglect proceeding, he disregarded the juvenile court's directive that any appeal was to this court and initiated an improper appeal. Tenn. Code Ann. § 37-1-159(g).

The confusion in this action arose due to the use of an outdated and incorrect form, as well as the juvenile court judge signing an order prepared by Mother's counsel that labeled the case a dependency and neglect proceeding and left out the trial court's directive that any appeal was to this court. In our view, because Mother did not properly file an appeal to the circuit court, the jurisdiction of that court did not attach. The juvenile court retained jurisdiction to hear Father's motion and act accordingly because an appeal as of right had not been perfected. *See* Tenn. R. Juv. P. 118(e-f). Father properly moved the juvenile court to set aside the previous final order and enter a new judgment. *See* Tenn. R. Civ. P. 60.02. In the juvenile court's September 12, 2018, order, it was decreed that the judgment would be altered to "reflect that this matter came to be heard on a Petition to Establish Paternity and Custody, and for the Court to adopt a Parenting Plan." The order also reiterated: "[t]he appeal from the Court's Final Judgment remains to the Court of Appeals and not the Circuit court." Accordingly, we find that the juvenile court did not err in granting Father's motion to alter the judgment given that Mother's appeal to the circuit court was improper.

### D. & E.

Under the current Hamilton County Juvenile Court System, bifurcated proceedings are conducted for child support and child custody. Each case is set before a distinct magistrate. Mother filed a separate claim for child support, which was assigned a separate juvenile court docket number, 54548. Soon after Mother improperly appealed the juvenile court's February 21, 2018, order to the circuit court, she moved to join the pending child support matter to her appeal filed in the circuit court for the sake of judicial economy. On August 23, 2018, the circuit court judge granted Mother's motion and added the pending child support action to the appeal. Father argues that the child support matter should not be heard in the circuit court because the appeal to the circuit court was improper.

Once the circuit court determined that it lacked jurisdiction to hear the main appeal

from juvenile court, it properly dismissed Mother's appeal. In view of that determination, the judicial economy basis to retain the child support case lost all viability. Further, as jurisdiction over the appeal did not attach, the transfer of the child support matter to the circuit court was improper.

## V.     CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for further proceedings as may be necessary. Costs of the appeal are assessed to the appellant, Brittany Nicole W.

_____

JOHN W. McCLARTY, JUDGE